DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Johnnie M. McBride, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying her permanent total disability compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate concluded that "(1) Dr. Fitz's reports, along with his deposition testimony, do constitute some evidence upon which the commission relied to support its finding that relator is medically able to perform sedentary work; (2) the commission did not abuse its discretion in considering relator's age; (3) the commission did not abuse its discretion in considering relator's vocational training as a drafter; (4) the commission did not abuse its discretion with respect to Dr. Stoeckel's report; and (5) Mr. Cody's addendum report does constitute some evidence upon which the commission can rely." (Magistrate's Decision, ¶ 28.) Accordingly, the magistrate determined the court should deny the requested writ.
 {¶ 3} Relator has filed objections to the magistrate's decision, largely rearguing those matters adequately addressed in the decision. For the reasons set forth in the magistrate's decision, the objections are overruled.
 {¶ 4} Specifically, relator continues to object to the staff hearing officer's reference to "transferable work skills," premised on Dr. Stoeckel's report. The staff hearing officer's order states, "Dr. Stoeckel, who submitted a vocational report at the Injured Worker's request, opined that the Injured Worker possesses transferable skills to other drafting positions. The Staff Hearing Officer finds that such attainment of employment skills is an asset which would qualify her to perform entry level occupations."
 {¶ 5} As the magistrate explained, "[t]he commission's analysis of relator's mechanical drafting experience and her participation in college level computer training led the commission to conclude that her 11th grade formal education was an asset because she had demonstrated an ability to acquire skills through training. The commission did not abuse its discretion by correlating relator's training in mechanical drafting with an ability to meet the demands of entry level work today." (Magistrate's Decision, ¶ 45.) Moreover, in addressing Dr. Stoeckel's report, the magistrate noted that Dr. Stoeckel concluded relator's skills are not "highly transferable." (Emphasis sic.) (Magistrate's Decision, ¶ 47.) As a result, the magistrate properly concluded that "Dr. Stoeckel does state that relator possesses transferable skills but with some qualification." (Magistrate's Decision, ¶ 48.) Any error in the staff hearing officer's failure to note Dr. Stoeckel's qualification is not determinative. Lastly, the magistrate properly observed that the order at issue is based on the medical report and deposition of Dr. Fitz and the vocational report and addendum of Mr. Cody; the staff hearing officer did not list Dr. Stoeckel's report among the evidence on which the order is based.
 {¶ 6} Similarly unpersuasive is relator's objection to the staff hearing officer's discussion of relator's age. Again, the magistrate properly concluded that the commission could find relator's age a barrier to participation in programs related to academic remediation, but at the same time find it is not a factor that would affect her ability to meet the demands of an entry level position.
 {¶ 7} Lastly, relator appears to argue that Dr. Fitz's report and deposition do not support the staff hearing officer's conclusion. As the magistrate properly observed, "[r]elator's argument simply ignores that Dr. Fitz's deposition testimony did not change his opinion on the April 12, 1999 occupational activity assessment as to relator's capacity to sit, stand, and walk." (Magistrate's Decision, ¶ 49.) Moreover, to the extent relator suggests that the combination of the one-half hour restriction, coupled with relator's age and prior employment combine to render relator unfit for sustained remunerative employment, her contentions are without merit. The staff hearing officer analyzed each of the nonmedical factors and within her discretion properly concluded, based on the record, that relator could perform sustained remunerative employment.
 {¶ 8} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Brown and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Johnnie M. McBride, : Relator, : v. : No. 04AP-114 United Home Care and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on August 30, 2004 Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Joseph A.Butkovich and Robert E. Hof, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
Kohnen Patton, LLP, and Anthony J. Caruso, for respondent United Home Care.
 IN MANDAMUS {¶ 9} In this original action, relator, Johnnie M. McBride, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 10} 1. On January 11, 1996, relator sustained an industrial injury while employed as a nursing assistant for respondent United Home Care. The industrial claim is allowed for: "contusion left buttock and left hip; sciatica; aggravation of pre-existing lumbar degenerative disc disease; aggravation of pre-existing lumbar spinal stenosis," and is assigned claim number 96-312263.
 {¶ 11} 2. On October 16, 1998, relator filed an application for PTD compensation.
 {¶ 12} 3. On April 12, 1999, at the commission's request, relator was examined by William R. Fitz, M.D. Dr. Fitz wrote:
* * * "Can the claimant perform any of her former positions of employment?" No, I do not believe she could perform the essential functions of a home care aid, which requires assisting others with bathing, dressing, shaving and preparing meals.
* * * "Can the claimant perform any sustained remunerative work activity?" Yes, I believe she could perform sedentary to light work activity.
 {¶ 13} 4. Also on April 12, 1999, Dr. Fitz completed an occupational activity assessment form. The form asks the examining physician to indicate by checkmark claimant's capability in each of several occupational activities. The form instructs the examining physician:
* * * The time indicated may be made up of interrupted periods of occupational activity throughout the day. Restrictions must be based on impairment arising from allowed condition(s) only[.]
 {¶ 14} 5. On the form, Dr. Fitz indicated by checkmark that relator can "sit" for "5-8 HRS." She can "stand" for "3-5 HRS." She can "walk" for "3-5 HRS."
 {¶ 15} 6. On April 30, 1999, relator moved for leave to depose Dr. Fitz. The commission denied the motion.
 {¶ 16} 7. The commission requested an employability assessment report from William T. Cody, a vocational expert. The Cody report, dated July 3, 1999, responds to the following query:
Based on separate consideration of the reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation or training.
 {¶ 17} 8. Indicating acceptance of Dr. Fitz's reports, and responding to the above query, Cody listed the following "employment options":
* * * Sedentary assembler, sedentary cashier, sedentary inspector, telephone solicitor, order clerk, call out operator, telephone quotation clerk, stuffer, addresser, pari-mutuel ticket checker, and surveillance system monitor are current employment options.
Grading clerk, scheduling clerk, food checker, timekeeper, semiconductor assembler, engraver, production clerk, police aide, reservation clerk, and registration clerk are additional employment options following short term training.
 {¶ 18} 9. Under "III Effects of Other Employability Factors," Cody wrote:
[One] Question: How, if at all, do the claimant's age, education, work history, or other factors (physical, psychological, sociological) effect their ability to meet the basic demands of entry level occupations?
[One] Answer: Age: Her closely approaching advanced age of sixty-three years may pose obstacles to vocational adjustment, meeting the basic demands of entry level work.
Education: Her level of educational attainment and demonstrated ability, demonstrated through her work history, is appropriate for entry level work activity.
Work History: Her work history is not an asset to vocational adjustment nor is it, necessarily, a limitation to it.
* * *
[Two] Question: Does your review of the background information indicate whether the claimant may reasonably develop academic or other skills required to perform entry level sedentary or light physical demand level jobs?
[Two] Answer: Not specifically addressed, but not contraindicated.
[Three] Question: Are there significant issues regarding potential employability limitations or strengths to be called to the SHO's attention?
[Three] Answer: No.
 {¶ 19} 10. Under "IV Employability Assessment Database," Cody wrote:
B. Work History:
Job Title * * * Skill Level Strength Level Dates
Nursing 1993- Assistant * * * Semiskilled Medium 1996
1976-
Drafter * * * Skilled Sedentary 1992
C. Educational History
 Highest Grade Completed: Eleventh Date of Last Attendance: 1952 High School Graduate: no GED: no
 Vocational Training: Mechanical drafting in 1975 ICO Educational Classification: Limited with training
 {¶ 20} 11. Relator submitted a vocational report from psychologist Jennifer J. Stoeckel, Ph.D., dated August 3, 1998. In her report, Dr. Stoeckel wrote:
Vocationally, in the past Ms. McBride has worked in a semiskilled medium position as a nurse's aide and in a skilled sedentary job as a drafter. As a nurse's aide, Ms. McBride would have demonstrated the ability to deal with all kinds of people including young, elderly, sick or disabled; understanding and following instructions exactly and caring for dependent individuals; and using arms, hands, eyes and fingers with skill. While this position is considered semiskilled, it would not afford Ms. McBride any transferable skills to sedentary or lighter positions. As a draftsperson, Ms. McBride performed skilled, sedentary employment that would have required the ability to use clear language to write technical reports, perform detail work with great accuracy, use fingers skillfully when making drawings, coordinate eyes, hands, fingers to operate equipment, adjust instruments, making drawings, coordinate eyes, hands, fingers to operate equipment, adjust instruments [sic], make schedules or use measuring tools, make decisions quickly according to both personal judgment and facts, use geometry and other kind of higher mathematics, perform under stress. While she possesses transferable skills to other drafting positions, it is my estimation that Ms. McBride would require a considerable amount of re-orientation and training to perform these positions adequately. Certainly, while she has developed some foundation in that field, the tools, industry, work procedures, etc., that she has acquired are in fact peculiar to her past relevant employment. To secure other drafting positions at the sedentary range, if she could no longer perform her former work, she would be required to learn and utilize new tools, work procedures, etc. peculiar to whatever industry. It is reported by Ms. McBride that she has only three months experience with Lotus which deals with spreadsheets and has only limited experience with drafting software called Microstation. Her limited experience with Microstation, as well as the fact she only worked three months with Lotus would not make her marketable for other drafting positions, most of which would require more extensive experience with computer software and utilization. In this regard, her skills are not highly transferable nor marketable in today's labor force. Again, other drafting positions would require a considerable amount of job re-training and/or orientation. * * *
 {¶ 21} 12. Following a September 30, 1999 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application.
 {¶ 22} 13. Thereafter, relator filed in this court a mandamus action which was assigned case No. 00AP-1050. The action resulted in the parties filing a Civ.R. 41(A) stipulation of dismissal which recites an agreement of the parties. The parties agreed: that the SHO's order of September 30, 1999, which denied the PTD application would be vacated, that leave to depose Dr. Fitz would be granted, that Mr. Cody would issue an amended report after reviewing the deposition transcript, and that, following a de novo hearing, an SHO would then issue a new order adjudicating the PTD application.
 {¶ 23} 14. On September 18, 2002, relator deposed Dr. Fitz. During the deposition, Dr. Fitz identified the occupational activity assessment form that he had completed on April 12, 1999. Regarding the form, the following exchange occurred between relator's counsel and Dr. Fitz:
[Relator's counsel]: Can you, as you sit there — Probably not today, but when you completed this form, you also said then stand and walk, it looks like, three to five hours you checked, correct?
[Dr. Fitz]: Yes.
[Relator's counsel]: So do you have any opinion, I guess, or can you tell me what you envisioned as far as how long she would, first, be able to sit before she would have to, as you said, get up and move around for a while before she could then sit again?
[Dr. Fitz]: Most people with these kinds of problems can tolerate sitting for 30 minutes; but usually by then, they need to get up and move around.
[Relator's counsel]: Okay. In her case, I guess you would say she would be able — she would be able to sit for 30 minutes, get up, move around, and then go back and sit for another 30 minutes?
[Dr. Fitz]: Yes, at least 30, because we sat there and talked for a while. And so, you know, I got to see how she was able to do just sitting there for a while.
[Relator's counsel]: I guess the number you would use would be 30 minutes, then?
[Dr. Fitz]: Without moving, yes.
[Relator's counsel]: Right. And then I guess the total — those half hour increments would then total up to somewhere between five and eight hours is how you're —
[Dr. Fitz]: Exactly.
* * *
[Relator's counsel]: When she has to move for that half hour, would it be the kind of thing where she would get up and walk around for a few minutes kind of thing? Is that what you would have in mind?
[Dr. Fitz]: Yes, just really a brief period of just moving.
(Dr. Fitz Depo. 13-14.)
 {¶ 24} 15. On October 29, 2002, Mr. Cody issued an addendum to his July 3, 1999 report. Cody wrote: "The purpose of this report is to evaluate employment options based on the medical report(s) submitted by William Fitz, MD dated 9/18/02 (deposition)." In his addendum, Cody listed the same employment options that he had previously listed in his July 3, 1999 report.
 {¶ 25} 16. Following a February 18, 2003 hearing, an SHO issued an order denying relator's PTD application. The SHO's order states:
The Injured Worker was examined by Dr. Fitz at the request of the Industrial Commission with respect to the allowed orthopedic conditions in the claim. Dr. Fitz opined that the Injured Worker has reached Maximum Medical Improvement and has a resulting 10% impairment to the whole person. Dr. Fitz opined that the Injured Worker would be unable to perform the duties of her former position of employment considering the allowed conditions, but would be capable of performing sedentary and light duty employment. Dr. Fitz completed an occupational activity assessment form wherein he specified the restrictions related to the allowed conditions. Dr. Fitz was subsequently deposed by the Injured Worker's attorney and questioned about the restrictions related to the allowed conditions. During the deposition, Dr. Fitz clarified that the Injured Worker can sit or stand for an average of 30 minutes at a time and would need to take breaks as needed to change her position throughout the workday. He further opined that the Injured Worker may experience periods of pain which would further restrict her activities on a particular day.
The Staff Hearing Officer finds that the Injured Worker is unable to return to her former position of employment as a result of the allowed conditions in the claim. The Staff Hearing Officer further finds that the Injured Worker is capable of performing sedentary work with the limitations noted by Dr. Fitz in the deposition and on the occupational activity assessment form. The Staff Hearing Officer finds that Dr. Fitz clarified his opinion with respect to the restrictions provided on the occupational activity assessment form in that he limited the Injured Worker's ability to sit or stand to an average of 30 minutes without taking a break and moving in position.
An employability assessment of the Injured Worker was performed by Mr. Cody at the request of the Industrial Commission. Mr. Cody opined that considering the residual functional capacities as expressed by Dr. Fitz in his report and after reviewing the deposition, the Injured Worker has the following employment options: sedentary assembler, sedentary inspector, sedentary cashier, telephone solicitor, order clerk, call out operator, telephone quotation clerk, stuffer, addresser, pari-mutuel ticket checker, and surveillance system monitor. Mr. Cody opined that the Injured Worker would have additional employment options which he noted in his addendum to his report. Mr. Cody considered the Injured Worker's age of 63 at the time she filed this application and opined that she is categorized as a person closely approaching advanced age. Mr. Cody opined that this age may pose obstacles to vocational adjustment and meeting the basic demands of entry level work. He further reviewed the Injured Worker's educational attainment and noted that she completed the eleventh grade and had additional training in mechanical drafting. Mr. Cody opined that the Injured Worker's education is appropriate for entry level work. He further reviewed the Injured Worker's work history and opined that it is a neutral factor.
The Staff Hearing Officer finds that the Injured Worker was 63 years of age at the time she filed this application, has an eleventh grade formal education and work experience as a nursing assistant, and drafter. The Staff Hearing Officer finds that the Injured Worker's age is not a factor which would affect her ability to meet the basic demands of entry level occupations. The Staff Hearing Officer finds that the Injured Worker's age is a barrier in participating in programs aimed at academic remediation. The Staff Hearing Officer further finds that the Injured Worker's education is an asset in that it demonstrates her ability to acquire skills through training. Specifically, the Staff Hearing Officer finds that the Injured Worker participated in vocational training to learn the skills of mechanical drafting. The Injured Worker testified at hearing that she further participated in training programs at a college level in computer training. The Staff Hearing Officer finds that the Injured Worker performed skilled sedentary employment as a draft person which would have required the ability to use clear language to write technical reports, perform detail work with great accuracy, use fingers skillfully when making drawings, coordinate hands, eyes, and fingers to operate equipment, adjust instruments, make drawings using measuring tools, make decisions quickly according to personal judgment and facts, and use geometry and other kinds of higher mathematics. Dr. Stoeckel, who submitted a vocational report at the Injured Worker's request, opined that the Injured Worker possesses transferable skills to other drafting positions. The Staff Hearing Officer finds that such attainment of employment skills is an asset which would qualify her to perform entry level occupations. Considering the Injured Worker's age, education, and work experience in conjunction with her physical limitations and capabilities considering the allowed conditions, the Staff Hearing Officer finds that the Injured Worker is able to perform the occupations of sedentary assembler, sedentary inspector, sedentary cashier, telephone solicitor, order clerk, call out operator, telephone quotation clerk, stuffer, addresser, parimutuel ticket checker, and surveillance system monitor. Accordingly, the Injured Worker's application for Permanent Total Disability Compensation is denied.
This order is based on the medical report and deposition of Dr. Fitz and the vocational report and addendum of Mr. Cody.
 {¶ 26} 17. On February 3, 2004, relator filed this mandamus action.
Conclusions of Law:
 {¶ 27} Several issues are suggested: (1) whether the reports of Dr. Fitz, along with his deposition testimony, are some evidence upon which the commission can rely to support its finding that relator is medically able to perform sedentary work; (2) whether the commission abused its discretion in considering relator's age; (3) whether the commission abused its discretion in considering relator's vocational training as a drafter; (4) whether the commission abused its discretion with respect to Dr. Stoeckel's report; and (5) whether Mr. Cody's addendum report constitutes some evidence upon which the commission can rely.
 {¶ 28} The magistrate finds: (1) Dr. Fitz's reports, along with his deposition testimony, do constitute some evidence upon which the commission relied to support its finding that relator is medically able to perform sedentary work; (2) the commission did not abuse its discretion in considering relator's age; (3) the commission did not abuse its discretion in considering relator's vocational training as a drafter; (4) the commission did not abuse its discretion with respect to Dr. Stoeckel's report; and (5) Mr. Cody's addendum report does constitute some evidence upon which the commission can rely.
 {¶ 29} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 30} Turning to the first suggested issue, relator asserts that "[b]ecause Dr. Fitz' deposition testimony limits the Relator's ability to sit to thirty minutes at a time in an eight hour workday," it cannot constitute some evidence upon which the commission can rely. (Relator's brief at 7.)
 {¶ 31} Although relator fails to fully explain her argument regarding the evidentiary value of Dr. Fitz's reports, the magistrate will, nevertheless, endeavor to address the issue. While relator does not cite to the commission's definition of sedentary work, the magistrate finds it helpful to begin analysis with Ohio Adm. Code 4121-3-34(B)(2)(a), which states:
"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from onethird to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 32} On the occupational activity assessment form, dated April 12, 1999, Dr. Fitz indicated by checkmark that relator can sit "5-8 HRS." The preprinted form indicates that the time indicated may be made up of interrupted time periods of occupational activity throughout the day.
 {¶ 33} During his deposition testimony, Dr. Fitz stated that relator can sit for 30 minutes at a time, but then she needs to get up and move around for a brief period before sitting for another 30 minutes. Significantly, during his deposition, Dr. Fitz was simply asked by relator's counsel to confirm that he checked "5-8 HRS" for relator's sitting capacity on the occupational activity assessment form. Dr. Fitz did confirm that he had checked "5-8 HRS" for relator's sitting capacity.
 {¶ 34} Because the "5-8 HRS" sitting capacity can be made up of interrupted periods of sitting activity throughout the day, there is no inconsistency with Dr. Fitz's deposition testimony that relator can sit for 30 minute periods of time. Moreover, a five to eight hour daily sitting capacity that is limited to sitting for 30 minute periods separated by brief periods of bodily movement is not inconsistent with the definition of sedentary employment.
 {¶ 35} In short, contrary to relator's suggestion, Dr. Fitz's deposition testimony regarding the 30 minute sitting periods does not in any way detract from his opinion that relator is medically able to perform sedentary employment.
 {¶ 36} The second issue is whether the commission abused its discretion in considering relator's age. The SHO's order of February 18, 2003, addresses relator's age as follows:
* * * Mr. Cody considered the Injured Worker's age of 63 at the time she filed this application and opined that she is categorized as a person closely approaching advanced age. Mr. Cody opined that this age may pose obstacles to vocational adjustment and meeting the basic demands of entry level work. * * *
The Staff Hearing Officer finds that the Injured Worker was 63 years of age at the time she filed this application, has an eleventh grade formal education and work experience as a nursing assistant, and drafter. The Staff Hearing Officer finds that the Injured Worker's age is not a factor which would affect her ability to meet the basic demands of entry level occupations. The Staff Hearing Officer finds that the Injured Worker's age is a barrier in participating in programs aimed at academic remediation. * * *
 {¶ 37} In her brief filed in this action, relator presents the following argument regarding age:
* * * [I]n spite of the Vocational Expert, Mr. Cody's, opinion that the Relator's advanced age could pose obstacles to vocational adjustment and meeting the demands of entrylevel work, the Staff Hearing Officer simply concludes, without reference to support the findings, that the Relator's age would have no impact on her ability to engage in entry-level work. No where [sic] in the order does the Staff Hearing Officer adequately address the effect of the Relator's age on her ability to engage in such employment. Moreover, the Staff Hearing Officer goes on to state that the Relator's age is a barrier in participating in programs aimed at academic remediation, yet also states that the Relator could possibly acquire skills through "training," in the future. Besides being equivocal, the Staff Hearing Officer's finding does not adequately explain how the Relator's age, while being a barrier to academic remediation, is not a barrier to vocational adjustment, especially given the fact that the evidence indicates a lack of transferable work skills. * * *
(Relator's brief at 9-10.)
 {¶ 38} The commission has a responsibility to affirmatively address the age factor. State ex rel. Moss v. Indus. Comm.
(1996), 75 Ohio St.3d 414, 417. The commission must discuss age in conjunction with other aspects of the claimant's individual profile that may lessen or magnify the effects of age. Id. Age must always be considered on a case-by-case basis. Id. There is not an age — ever — at which reemployment is held to be virtually impossible as a matter of law. Id.
 {¶ 39} The absence of an age discussion is not necessarily a fatal flaw, nor does it, in some cases, even compel a return of the cause. State ex rel. Blue v. Indus. Comm. (1997),79 Ohio St.3d 466, 469-470; State ex rel. Rothkegel v. Westlake (2000),88 Ohio St.3d 409, 441-412.
 {¶ 40} It is not inconsistent for the commission to find that relator's age is a barrier to participation in programs aimed at academic remediation, but it is not a factor which would affect her ability to meet the basic demands of entry level occupations. These commission findings are simply a recognition that the impact of age can vary depending on the activity being addressed. Here, the commission found that age negatively impacts the potential for academic remediation, but does not negatively impact the ability to meet the demands of entry level occupations. Clearly, the commission's findings regarding age are not an abuse of discretion.
 {¶ 41} It should be further noted that, contrary to relator's assertion in her brief as above quoted, the commission did not find that relator has a present or future ability to acquire skills through training. The commission, however, did find that relator had previously demonstrated an ability to acquire skills through training subsequent to her obtaining an 11th grade education.
 {¶ 42} The third and fourth issues will be addressed together. In this regard, the SHO's order of February 18, 2003 states:
* * * The Staff Hearing Officer further finds that the Injured Worker's education is an asset in that it demonstrates her ability to acquire skills through training. Specifically, the Staff Hearing Officer finds that the Injured Worker participated in vocational training to learn the skills of mechanical drafting. The Injured Worker testified at hearing that she further participated in training programs at a college level in computer training. The Staff Hearing Officer finds that the Injured Worker performed skilled sedentary employment as a draft person which would have required the ability to use clear language to write technical reports, perform detail work with great accuracy, use fingers skillfully when making drawings, coordinate hands, eyes, and fingers to operate equipment, adjust instruments, make drawings using measuring tools, make decisions quickly according to personal judgment and facts, and use geometry and other kinds of higher mathematics. Dr. Stoeckel, who submitted a vocational report at the Injured Worker's request, opined that the Injured Worker possesses transferable skills to other drafting positions. The Staff Hearing Officer finds that such attainment of employment skills is an asset which would qualify her to perform entry level occupations. * * *
 {¶ 43} In her brief filed in this action, relator argues the third and fourth issues suggested here:
Further, the Staff Hearing Officer's finding that the Relator's vocational training as a drafter in the 1960's correlates to her ability to perform entry level work in 2004, is also not supported by any evidence in the file. Specifically, the Staff Hearing Officer cited Dr. Stoeckel's vocational report to support her finding that the Relator possessed transferable employment skills which, according to the Staff Hearing Officer, would be an asset in attaining employment. However, upon close examination of Dr. Stoeckel's report, it is clear that the Staff Hearing Officer grossly misinterpreted the report. In Dr. Stoeckel's report, she specifically stated that the Relator's skills as a drafter in the past were not marketable in today's labor force and that current employment options utilizing drafter's skills would require the Relator to undergo a considerable amount of re-training and orientation. * * *
(Relator's brief at 10.)
 {¶ 44} Turning to the third issue, the magistrate notes that on relator's PTD application, she indicated that she had special training which she described as "mechanical drafting — 1975." Contrary to the assertions of relator in her brief, there is no evidence in the record of "vocational training as a drafter in the 1960's." Moreover, in her brief, relator ignores her hearing testimony that the SHO summarizes in the order of February 18, 2003. The SHO indicates that relator testified that she further participated in training programs at a college level in computer training. Relator's PTD application does not disclose information regarding participation in college level computer training programs.
 {¶ 45} The commission's analysis of relator's mechanical drafting experience and her participation in college level computer training led the commission to conclude that her 11th grade formal education was an asset because she has demonstrated an ability to acquire skills through training. The commission did not abuse its discretion by correlating relator's training in mechanical drafting with an ability to meet the demands of entry level work today.
 {¶ 46} As previously noted, the fourth issue is whether the commission abused its discretion with respect to Dr. Stoeckel's report. Relator claims that the commission grossly misinterpreted Dr. Stoeckel's report.
 {¶ 47} It should be noted that Dr. Stoeckel concluded that relator's "skills are not highly transferable nor marketable in today's labor force." (Emphasis added.) Earlier, Dr. Stoeckel wrote:
* * * While she possesses transferable skills to other drafting positions, it is my estimation that Ms. McBride would require a considerable amount of re-orientation and training to perform these positions adequately. * * *
 {¶ 48} In short, Dr. Stoeckel does state that relator possesses transferable skills but with some qualification. The SHO's statement that Dr. Stoeckel "opined that the Injured Worker possesses transferable skills to other drafting positions" can perhaps be criticized for failing to acknowledge Dr. Stoeckel's qualification. Nevertheless, this singular flaw is not fatal to the commission's nonmedical analysis. Significantly, in the last paragraph of the order, it is stated that the "order is based on the medical report and deposition of Dr. Fitz and the vocational report and addendum of Mr. Cody." Dr. Stoeckel's report is not listed as among the evidence upon which the order is based.
 {¶ 49} The fifth issue is whether Mr. Cody's addendum constitutes some evidence upon which the commission can rely. According to relator, based upon the fact that Mr. Cody listed the same employment options in his addendum as he did in his July 3, 1999 report, it is evident that Mr. Cody "failed to take into account the physical restrictions noted by Dr. Fitz in his deposition." (Relator's brief at 11.) Relator's argument simply ignores that Dr. Fitz's deposition testimony did not change his opinion on the April 12, 1999 occupational activity assessment as to relator's capacity to sit, stand, and walk.
 {¶ 50} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 _______________________ KENNETH W. MACKE MAGISTRATE