DECISION
{¶ 1} Relator, Lloyd Oliver, filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an ordering granting that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant the requested writ. (Attached as Appendix A.) The commission has filed objections to the magistrate's decision.
 {¶ 3} The commission has not objected to the magistrate's findings of fact, and we adopt those findings as our own. In brief, relator filed an application for PTD compensation. In denying relator's application, the commission addressed both medical and non-medical factors. The non-medical factors included relator's age (relator was 68 years old at the time), educational background (relator completed the fifth grade), and work history. Based on the medical and non-medical factors at issue, the commission concluded that relator's disability was not total, he is capable of engaging in sustained remunerative employment, and he is capable of being retrained to engage in other sustained remunerative employment.
 {¶ 4} The magistrate found the commission's analysis of relator's age and education to be "seriously flawed" and ordered a remand to the commission for a proper analysis of those factors. The commission filed objections to the magistrate's decision, arguing that the commission's analysis of the age and education factors was adequate, and the requested writ should be denied. We begin with the commission's discussion of relator's education.
 {¶ 5} The commission found that relator's fifth grade education appeared, at first blush, to be a negative vocational factor, but ultimately determined that it was a neutral factor given relator's work history and apparent ability to learn new jobs throughout his life. The magistrate found this discussion of relator's education to be flawed because nothing in relator's work history changed the fact that relator has a marginal education, which the commission should have concluded was a negative factor notwithstanding relator's work history.
 {¶ 6} We begin with the principle that the commission is the expert on vocational matters and may draw its own conclusions from the vocational information presented. State ex rel. Jacksonv. Indus. Comm. (1997), 79 Ohio St.3d 266, 267; State ex rel.Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 141; State exrel. Pence v. Indus. Comm., Franklin App. No. 04AP-124,2004-Ohio-7052, affd., 107 Ohio St.3d 286, 2005-Ohio-6507. The commission is also the exclusive evaluator of the weight and credibility of the evidence. State ex rel. LTV Steel Co. v.Indus. Comm. (2000), 88 Ohio St.3d 284, 287.
 {¶ 7} Here, while acknowledging relator's educational limitations, the commission assessed relator's abilities in light of his work history, which the commission detailed at length. That history demonstrates relator's ability, despite his limited formal education, to learn new skills and jobs "through on-the-job training and through self-teaching." Having made such determinations, and having discussed them at length, the commission properly found "the overall educational factor to be neutral." Therefore, we sustain the commission's objection in that respect, and we find that the commission properly analyzed relator's education.
 {¶ 8} As to relator's age, the commission found that relator was 68 years old at the time of the hearing and simply concluded: "Such age is a vocationally neutral factor. While some employers prefer younger employees with more work-life remaining over the course of employment, other employers prefer more mature employees with past work and life experience." Here, we agree with the magistrate that the commission did not "discuss age in conjunction with the other aspects of the claimant's individual profile that may lessen or magnify age's effects[,]" as State exrel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414, 417, requires and, therefore, that the commission's discussion of relator's age was inadequate.
 {¶ 9} We further find, however, that the commission's inadequate discussion of relator's age does not necessarily result in an order for further consideration. The absence of an age discussion is not necessarily a fatal flaw, nor does it, in some cases, even compel a return of the cause. State ex rel.Blue v. Indus. Comm. (1997), 79 Ohio St.3d 466, 469-470; Stateex rel. Rothkegel v. Westlake (2000), 88 Ohio St.3d 409,411-412; State ex rel. McBride v. United Home Care, Franklin App. No. 04AP-114, 2004-Ohio-6614. Where a claimant's other vocational factors are split between favorable and potentially unfavorable consideration, the claimant's PTD disability is not inevitable, and further consideration by the commission is proper. State ex rel. Mobley v. Indus. Comm. (1997),78 Ohio St.3d 579, 586. However, where a claimant's other vocational factors are all positive, age alone will not support PTD compensation, and further consideration would be improper.Rothkegel.
 {¶ 10} Here, the commission found, and relator does not dispute, that his medical impairment from the allowed conditions does not preclude employment. The commission also found, and we have affirmed, that relator's education is a neutral factor, and it does not preclude employment. And the commission found that relator's employment history is "a slightly positive re-employment factor." Thus, even if, upon further consideration, the commission were to conclude that relator's age is a negative, rather than a neutral, factor, relator's age would stand as the only factor potentially precluding employment. Precedent is quite clear, however, that a "claimant may not be granted permanent total disability compensation due solely to his age. Therefore, even in the absence of detailed discussion on the effects of claimant's age, the commission's explanation satisfies [State exrel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203]." Blue at 469-470. See, also, Mobley; State ex rel. Gokey v. Indus.Comm., Franklin App. No. 05AP-65, 2005-Ohio-6759; State ex rel.Yancey v. Columbus Maint. Serv. Co., Franklin App. No. 04AP-1357, 2005-Ohio-5325. Therefore, the commission's inadequate discussion of relator's age does not compel further consideration by the commission.
 {¶ 11} For these reasons, based upon an independent review of the evidence, we sustain the commission's objections to the magistrate's decision, and we deny the requested writ of mandamus.
Objections sustained, writ of mandamus denied.
Petree and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Lloyd Oliver, : :
Relator, : v. : No. 05AP-666 :
USA Waste of Ohio, Inc. and : (REGULAR CALENDAR) Industrial Commission of Ohio, : :
Respondents. : :
 MAGISTRATE'S DECISION Rendered on November 25, 2005 Michael J. Muldoon, for relator.
Jim Petro, Attorney General, and Douglas R. Unver, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 12} In this original action, relator, Lloyd Oliver, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 13} 1. Relator sustained two industrial injuries while employed as a "boom truck" driver. The job involved the delivery and pick-up of trash dumpsters. The February 4, 1998 injury is allowed for "contusion right shoulder; torn rotator cuff right shoulder, right shoulder impingement syndrome; adjustment reaction with mixed emotional features," and is assigned claim number 98-317972. The February 28, 2000 injury is allowed for "right carpal tunnel syndrome," and is assigned claim number 00-820943.
 {¶ 14} 2. On July 1, 2004, relator filed an application for PTD compensation.
 {¶ 15} 3. On August 26, 2004, relator was examined at the commission's request by John W. Cunningham, M.D. Dr. Cunningham reported:
In my medical opinion on both an objective and subjective medical basis in regards to these 2 claims and/or in combination, this individual indeed has attained maximum medical improvement status level of permanency and has reached a treatment plateau that is static or well stabilized at which no fundamental, function or physiological changes can be expected despite continuing medical and rehabilitative procedures on a non psychiatric/non emotional basis. As discussed and calculated above, this individual has a 22% whole person permanent partial impairment in regards to these 2 claims in combination.
A Physical Strength Rating Form has been completed on this date and is attached to this report for your review. In my medical opinion, this individual is capable of physical work activity in some medium work, provided he is not asked to utilize his right arm at or above shoulder level in the course of his employment. This individual is capable of lifting, carrying, pushing, pulling and otherwise moving objects up to 30 pounds in weight provided his right upper extremity is below the shoulder level. * * *
 {¶ 16} 4. On August 26, 2004, at the commission's request, relator was examined by Earl F. Greer, Jr., Ed.D., a psychologist. Dr. Greer reported:
* * * The claimant has reached maximum medical improvement, with him reporting having been involved in psychological/psychiatric treatment for approximately 2½-3 years.
* * * His degree of permanent emotional impairment due to his industrial accident on 2-4-98 and referenced by the AMA Guide to Permanent Impairments (4th and 2nd Editions); is presently estimated at Class II/20%.
* * * The degree of emotional impairment due to his industrial accident on 2-4-98 would currently not be expected to solely prevent him from returning to his former position of employment. Work would be expected to be therapeutic, enhancing his self worth; and with concentration, persistence, and pace adequate. Any vocational readjustment is recommended to be coordinated with psychological intervention.
(Emphasis sic.)
 {¶ 17} 5. In support of his application, relator submitted a vocational report dated October 3, 2004, from Molly S. Williams. The Williams report concludes:
* * * [A]n individual unable to perform his customary past relevant work as a Boom Truck Operator; an individual of advanced age (age fifty-five or over); an individual with a marginal education (sixth grade level of [sic] less); an individual with no transferable skill(s); and an individual not expected to make a vocational adjustment to other work based upon the allowed physical impairment(s) as assessed by The Industrial Commission's Specialist, John W. Cunningham, M.D., it is obvious that the claimant is permanently and totally disabled.
 {¶ 18} 6. Following an April 29, 2005 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
This order is based on the reports of John W. Cunningham, M.D., from examination of the injured worker on 08/26/2004, the reports of Earl F. Greer, Jr. Ed. D., dated 08/26/2004, and the injured worker's non-medical disability factors.
Dr. Cunningham, who examined the injured worker for the recognized physical conditions, which involve only the right upper extremity, opined that the injured worker has reached maximum medical improvement and the injured worker is capable of "medium work." Further, Dr. Cunningham indicated the injured worker "is capable of physical work activity in some medium work, provided he is not asked to utilize his right arm at or above shoulder level in the course of his employment. This individual is capable of lifting, carrying, pushing, pulling and otherwise moving objects up to 30 pounds in weight provided his right upper extremity is below the shoulder level." "Medium work" for purposes of determining the injured worker's physical strength rating is defined as:
Medium work means exerting twenty to fifty pounds of force of force [sic] occasionally, and/or ten to twenty-five pounds of force frequently, and/or greater than negligible up to ten pounds of force constantly to move objects. Physical demand requirements are in excess of those for light work.
"Medium work" would also include the ability to perform "light work" and "sedentary work." "Light work" for purposes of workers' compensation benefits, is defined as:
"Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
"Sedentary work" for purposes of determining the claimant's physical strength rating for workers' compensation purposes is defined as:
Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
Noting that the allowed physical conditions are limited to the injured worker's right upper extremity, this hearing officer specifically accepts the above opinions of Dr. Cunningham, to the extent the injured worker can perform sedent[a]ry and light work only.
Dr. Greer, who examined the injured worker for the allowed psychological condition, opined that the injured worker has reached maximum medical improvement, is capable of returning to work at any former position of employment, and is capable of performing sustained remunerative employment. Further, Dr. Greer wrote," Work would be expected to be therapeutic, enhancing his self worth and with concentration, persistence, and pace adequate. Any vocational readjustment is recommended to be coordinated with psychological intervention." This hearing officer specifically accepts these opinions of Dr. Greer.
Based on the opinions of Doctors Cunningham and Greer, as accepted above, this Staff Hearing Officer finds that the injured worker's medical impairment from the allowed conditions is not, by itself, dispositive of this permanent and total disability issue; therefore, it is necessary to consider the injured worker's non-medical disability factors.
The injured worker is 68 years old. Such age is a vocationally neutral factor. While some employers prefer younger employees with more work-life remaining over the course of employment, other employers prefer more mature employees with past work and life experience.
The injured worker completed the 5th grade. The injured worker testified that he left school to go to work to help his family. Per the injured worker's testimony at hearing, he can "sparingly" read, write and do basic math. He further indicated that he did read the newspaper, but does not do so since he cannot afford to purchase it. He likes movies, watches TV, sings karaoke, and does a little gardening. He does some dishes, cooking, laundry, and helps his disabled wife. At first blush, this hearing officer finds the injured worker's educational skills to be a negative vocational factor; however, when reviewed in light of his work history and ability to learn to perform his jobs over the years, this hearing officer finds the overall educational factor to be neutral.
The injured worker stated that he does drive an automatic transmission vehicle, and he does have a valid driver's license. He took both his regular driver's license examination and his chauffeur's license examination orally.
The injured worker testified to the following employment experience: farm laborer, furniture store delivery helper, dock worker, trash collector, truck driver, and boom truck driver. The injured worker was in a laborers' Union for a period of time. He stated he was never fired from any job, and from this, the hearing officer finds he was able to learn all the skills necessary to perform the required work.
The claimant stated that he last worked on 02/04/1998, has not looked for any work since that date, and he has made no attempt to secure a GED.
Over the course of his employment history, the injured worker demonstrated the ability to perform repetitive work, read maps, keep logs, follow time schedules, make judgments, work with hand tools, drive a forklift, drive a truck, operate a boom/crane, operate machinery, meet attendance requirements, and work independently of direct supervision while driving a truck on the road. The injured worker testified that he was able to learn the above jobs and tasks through on-the-job training and through self-teaching. He enjoyed fairly steady employment after leaving school around 1950, until he exited the job market in 1998. These past positions provided the claimant with some general vocational abilities/skills which would transfer into a light or sedentary unskilled position within the restrictions listed by Dr. Cunningham. This staff hearing officer further specifically finds, based on the physical restrictions, that the injured worker could not return to work at his former position of employment, but could return to work as a lighter-duty truck driver within Dr. Cunningham's restrictions, or could be re-trained through short-term, on-the-job training, as an escort driver, assembler, usher and lobby attendant, gate guard, sorter, or "greeter" at a retail store. The injured worker's work history is found to be a slightly positive re-employment factor.
Based on the above listed medical capacities/restrictions, and the non-medical disability factors, this staff hearing officer finds that this injured worker's disability is not total, this injured worker is capable of engaging in sustained remunerative employment, and this injured worker is capable of being retrained to engage in other sustained remunerative employment. Therefore, the injured worker's request for an award of permanent total disability benefits is denied.
 {¶ 19} 7. On June 24, 2005, relator, Lloyd Oliver, filed this mandamus action.
Conclusions of Law:
 {¶ 20} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 21} In this action, relator does not challenge the commission's medical determination that his industrial injuries permit sedentary and light duty employment. However, relator does challenge the commission's analysis of the nonmedical factors.
 {¶ 22} The commission addressed three vocational factors in its order: age, education, and work history. Age 68 was found to be a "neutral factor." A fifth grade education was found to be a "neutral factor." Relator's work history was found to be a "slightly positive re-employment factor." The commission then concluded that relator is capable of sustained remunerative employment. Because the commission's analysis of age and education is seriously flawed, the magistrate finds that a remand to the commission for an amended order is required.
 {¶ 23} The Supreme Court of Ohio has addressed the commission's duty to address the age factor. In State ex rel.Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414, the court states:
Age must instead be considered on a case-by-case basis. To effectively do so, the commission must deem any presumptions about age rebuttable. Equally important, age must never be viewed in isolation. A college degree, for example, can do much to ameliorate the effects of advanced age.
[State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373]; [State ex rel. DeZarn v. Indus. Comm. (1996),74 Ohio St.3d 461]; and [State ex rel. Bryant v. Indus. Comm.
(1996), 74 Ohio St.3d 458] support these propositions. Collectively, these cases establish that there is not an age — ever — at which reemployment is held to be a virtual impossibility as a matter of law. Certainly, it would be remiss to ignore the limitations that age can place on efforts to secure other employment. However, limitation should never automatically translate into prohibition.
Each claimant is different, with different levels of motivation, initiative and resourcefulness. The claimant inBryant is an excellent example of a claimant who was motivated to work well beyond retirement age and was resourceful enough to find a job that valued the experience that his advanced age brought.
This underscores the commission's responsibility to affirmatively address the age factor. It is not enough for the commission to just acknowledge claimant's age. It must discuss age in conjunction with the other aspects of the claimant's individual profile that may lessen or magnify age's effects.
Id. at 417.
 {¶ 24} Ohio Adm. Code 4121-3-34(B)(3)(a) provides:
"Age" shall be determined at time of the adjudication of the application for permanent and total disability. In general, age refers to one's chronological age and the extent to which one's age affects the ability to adapt to a new work situation and to do work in competition with others.
 {¶ 25} The magistrate notes that, prior to its deletion effective April 4, 2004, former Ohio Adm. Code 4121-3-34(B)(3)(a) provided:
(i) Younger person: under fifty years of age.
(ii) Person of middle age: fifty years of age through fifty-nine years of age.
(iii) Person closely approaching advanced age: sixty years of age through sixty-nine years of age.
(iv) Person of advanced age: seventy years of age or older.
 {¶ 26} It was the duty of the commission to determine how relator's age of 68 years affects his ability to adapt to a new work situation and to do work in competition with others. Ohio Adm. Code 4121-3-34(B)(3)(a). Relator's age of 68 must be discussed in conjunction with other aspects of his profile that may lessen or magnify age's effects.
 {¶ 27} As the court noted in Moss, a college education can do much to ameliorate the effects of advanced age. Here, by comparison, relator has a fifth grade formal education.
 {¶ 28} The commission here simply declared that age 68 is a neutral factor because it believes that some employers prefer younger employees while others prefer "more mature" employees. The commission clearly failed to analyze how other aspects of relator's vocational profile lessen or magnify the effects of relator's age.
 {¶ 29} While Moss declares that there is not an age — ever — at which reemployment is held to be a virtual impossibility as a matter of law, the commission cannot simply declare that, generally speaking, age 68 is a neutral factor without an analysis of how relator's age is lessened or magnified by other aspects of his vocational profile.
 {¶ 30} Clearly, the commission abused its discretion by failing to properly address relator's age.
 {¶ 31} Ohio Adm. Code 4121-3-34(B)(3)(b) states:
"Education" is primarily used to mean formal schooling or other training which contributes to the ability to meet vocational requirements. The numerical grade level may not represent one's actual educational abilities. If there is no other evidence to contradict it, the numerical grade level will be used to determine educational abilities.
(i) "Illiteracy" is the inability to read or write. An injured worker is considered illiterate if the injured worker can not read or write a simple message, such as instructions or an inventory list, even though the person can sign his or her name.
(ii) "Marginal education" means sixth grade level or less. An injured worker will have ability in reasoning, arithmetic, and language skills which are needed to do simple unskilled types of work. Generally, formal schooling at sixth grade level or less is marginal education.
(iii) "Limited education" means seventh grade level through eleventh grade level. Limited education means ability in reasoning, arithmetic and language skills but not enough to allow an injured worker with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. Generally, seventh grade through eleventh grade formal education is limited education.
(iv) "High school education or above" means twelfth grade level or above. The G.E.D. is equivalent to high school education. High school education or above means ability in reasoning, arithmetic, and language skills acquired through formal schooling at twelfth grade education or above. Generally an individual with these educational abilities can perform semi-skilled through skilled work.
 {¶ 32} Here, the SHO states that relator has a fifth grade education. Perhaps recognizing that a fifth grade education is a marginal education, the SHO, at first blush, finds relator's educational skills to be a negative vocational factor. However, in light of relator's work history, the SHO finds the educational factor to be "neutral."
 {¶ 33} While the SHO's analysis of the work history shows a "slightly positive re-employment factor" the fact remains that relator only completed the fifth grade of formal schooling. Nothing identified in relator's work history changes the fact that relator has a marginal education.
 {¶ 34} While a marginal education does not necessarily mandate permanent total disability, even in a 68 year old claimant, the commission cannot simply brush the educational deficit aside by declaring it to be a neutral factor.
 {¶ 35} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO order of April 29, 2004, and, in a manner consistent with this magistrate's decision, enter a new order that either grants or denies relator's application for PTD compensation.