DECISION
{¶ 1} Relator, Lory Moyer, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability ("PTD") compensation and ordering the commission pursuant to State ex rel. Gay v. Mihm (1994),69 Ohio St.3d 315 to enter an order granting relator's application.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate. The magistrate has rendered a decision including findings of fact and conclusions of law, and has concluded that this court should deny the requested writ. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision, and the matter is now before the court for independent review pursuant to Civ.R. 53(E).
 {¶ 3} Relator's claim for a work-related injury sustained on June 22, 1981, was allowed for "broken left foot; left shoulder sprain; damage to sciatic nerve; injury to low back; peroneal distribution neuropathy; vascular changes on the leg; herniated lumbar disc."
 {¶ 4} At the time of filing relator's PTD application he was 65 years old, a high school graduate, and stated that he could read, write, and perform basic math. He provided an affidavit that he was only able to walk about one block before having to rest for 15 or 20 minutes, that he could stand continuously for only five minutes and then must sit or lie down for 15 to 30 minutes, and that he is only able to sit continuously for between 15 and 20 minutes.
 {¶ 5} Relator supported his application with the report of Peter J. Fagerland, D.C., who opined that relator suffered an 85 percent whole person impairment and should be considered permanently and totally disabled.
 {¶ 6} Relator was examined by James T. Lutz, M.D., who opined that relator had reached maximum medical improvement. Dr. Lutz assessed a 38 percent whole person impairment, and opined that relator would be capable of performing some sustained remunerative employment, if sedentary in nature and provided that he be able to sit and stand as desired for comfort. Dr. Lutz provided an occupational activity assessment noting that relator could not reach overhead with the upper left extremity, could sit, stand and walk for zero to three hours; lift, carry, push, pull or otherwise move up to 10 pounds for zero to three hours; occasionally climb stairs and use foot controls; never climb ladders, crouch, stoop, bend or kneel, and that relator was unrestricted in his ability to handle objects and to reach at waist and knee level. In a subsequent deposition conducted on behalf of relator, Dr. Lutz testified that relator's subjective complaints of pain were consistent with the allowed conditions, and despite his sitting impairment relator would be able to sit for approximately three hours per day if allowed to take frequent breaks and stand up or walk around for five to 10 minutes.
 {¶ 7} Relator also provided a vocational report prepared by Jennifer J. Stoeckel, Ph.D. Dr. Stoeckel concluded that, even based upon the report of Dr. Lutz, relator should be found to be permanently and totally disabled as there existed no jobs within his residual functional capacities that could accommodate the restrictions set forth by Dr. Lutz. Dr. Stoeckel further noted that relator had no transferable work skills, was approaching advanced age, that his high school diploma in contemporary academic terms equated to a seventh grade academic level, and had below average scores on most work aptitudes.
 {¶ 8} The record contains another employability assessment prepared by G. Denver Risley, opining that relator could immediately perform the following jobs: "auction clerk, information clerk, maintenance scheduler, or procurement clerk," and could with additional training perform work as a "lumber estimator, credit authorizer, mail order clerk, jewelry preparer or engraver." Risley noted that relator possessed some vocational strengths because of his twelfth grade education, absence of psychological issues, fair walking and sitting capacity, and work history of semi-skilled work. Risley's report noted similar vocational limitations to the other reports in the record: limited standing capacity, approaching advanced age, lack of transferable supervisory skills, and absence of work history since 1982. At a subsequent deposition, Risley testified that, given the restriction regarding overhead lifting, relator could not perform the clerk positions previously set forth, and that Dr. Stoeckel's testing appeared to be accurate in that relator was performing substantially below a twelfth grade level.
 {¶ 9} The commission's staff hearing officer ("SHO") issued an order denying the requested PTD compensation. The SHO relied primarily on the reports and deposition testimony of Dr. Lutz, finding that relator could engage in sedentary work activity, could draw upon a 28-year history of semi-skilled work as a forklift operator, and could, with accommodation for his inability to sit for extended periods, perform the clerking positions outlined above. The SHO accordingly found that relator was able to engage in sustained remunerative activity and is not permanently and totally disabled.
 {¶ 10} The magistrate concluded that the commission had not abused its discretion by finding that relator was capable of performing sustained remunerative employment because the commission could properly rely upon the medical report of Dr. Lutz to find that relator was capable of working at least four hours per day by combining his abilities to sit, stand, and walk. The magistrate found that, although the commission did cite certain of the vocational evidence in the record, it was not, by doing so, obligated to necessarily agree with the ultimate conclusion reached by those vocational experts cited. With the job classifications proposed which could offer the option of changing positions as required by relator to accommodate his limitations, the commission's order is supported by some evidence of vocational aptitude meeting the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 11} Relator's objections to the magistrate's decision principally center on the magistrate's conclusion that recent Ohio Supreme Court decisions involving part-time work and the definition of sustained remunerative employment now define the availability of sedentary employment based upon the ability to work four hours per day. Relator also asserts that the magistrate improperly ignored testimony by Dr. Lutz that relator's frequent breaks from a sitting or standing position would need to be taken away from the work station. Relator argues that there is no evidence in the record that any jobs exist that can accommodate the changes of positions for relator as specified in the SHO's order.
 {¶ 12} Despite the objections of relator, this court agrees with the magistrate's analysis of the facts and application of the law. In particular, we find that the magistrate has correctly analyzed State exrel. Libecap v. Indus. Comm. (Sept. 5, 1996), Franklin App. No. 96APD01-29, State ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360, and State ex rel. DeSalvo v. May Co. (June 29, 1999), Franklin App. No. 98AP-986 (memorandum decision) affirmed (2000), 88 Ohio St.3d 231, in his determination of whether relator was capable of sustained remunerative employment. See, generally, State ex rel. Cale v. Indus. Comm., Franklin App. No. 01AP-1143, 2002-Ohio-2924. For the reasons set forth in the magistrate's decision, therefore, this court overrules the objections of relator and adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained therein. The requested writ of mandamus is denied.
Objections overruled; writ denied.
Sadler and French, JJ., concur.
Wright, J., retired, of the Ohio Supreme Court, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Lory Moyer,:
 Relator, :
 :
v. : No. 04AP-92
 :
Sharonville Fire Dept. and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on June 18, 2004 James A. Whittaker, LLC, and James A. Whittaker, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 13} Relator, Lory Moyer, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 14} 1. Relator sustained a work-related injury on June 22, 1981, and his claim has been allowed for: "broken left foot; left shoulder sprain; damage to sciatic nerve; injury to low back; peroneal distribution neuropathy; vascular changes on the legs; herniated lumbar disc."
 {¶ 15} 2. Relator filed his application for PTD compensation on May 9, 2000. At the time relator was 65 years old, had graduated from high school, and stated that he could read, write, and perform basic math.
 {¶ 16} 3. Relator's application was supported by the June 21, 1999 report of Peter J. Fagerland, D.C., who opined that relator had an 85 percent whole person impairment and that he should be considered permanently and totally disabled and unable to sustain or find any forms of remunerative employment.
 {¶ 17} 4. Relator was examined by James T. Lutz, M.D., on October 17, 2000. Dr. Lutz opined that relator had reached maximum medical improvement, assessed a 38 percent whole person impairment, and opined that relator would be capable of performing some sustained remunerative employment, which is sedentary in nature, provided that he be able to sit and stand as desired for comfort and with no reaching overhead with the left upper extremity. Dr. Lutz completed an occupational activity assessment wherein he noted that relator could sit, stand, and walk for zero to three hours; lift, carry, push, pull or otherwise move up to ten pounds for zero to three hours; occasionally climb stairs and use foot controls; never climb ladders, crouch, stoop, bend or kneel, reach overhead or at floor level; and that he was unrestricted in his ability to handle objects, as well as to reach at waist and knee level.
 {¶ 18} 5. Relator was permitted to depose Dr. Lutz. In that deposition, Dr. Lutz testified that relator's subjective complaints of pain were all consistent with the allowed conditions and that, with regard to the sitting impairment, as long as relator was able to take frequent breaks and was able to stand up and walk around for five to ten minutes, relator would be able to sit for approximately up to three hours per day.
 {¶ 19} 6. Relator provided an affidavit indicating that he was only able to walk about one block before having to rest for 15 to 20 minutes, that he can stand continuously for five minutes and then he must sit or lay down for 15 to 30 minutes, and that he is only able to sit at one time for between 15 and 20 minutes.
 {¶ 20} 7. Relator provided a vocational report prepared by Jennifer J. Stoeckel, Ph.D., dated November 13, 2000. Dr. Stoeckel concluded that, even based upon the report of Dr. Lutz, relator should be found to be permanently and totally disabled as there were no jobs within his residual functional capacities that could accommodate the restrictions noted by Dr. Lutz. Furthermore, she noted that relator had no transferable work skills and that, based upon his advanced age, his seventh grade academic level, his below average scores on most work aptitudes, the restrictions noted by Dr. Lutz, it was a vocational certainty that relator should be considered permanently and totally disabled.
 {¶ 21} 8. An employability assessment was prepared by Mr. G. Denver Risley dated November 16, 2000. Based upon the medical report of Dr. Lutz, Mr. Risley opined that relator could immediately perform the following jobs: "Auction Clerk, Information Clerk, Maintenance Scheduler or Procurement Clerk." Following training, Mr. Risley concluded that relator could perform the following additional jobs: "Lumber Estimator, Credit Authorizer, Mail Order Clerk, Jewelry Preparer or Engraver."
 {¶ 22} 9. Mr. Risley noted the following primary vocational strengths: 12th grade education, no psychological issues, fair walk and sitting capacity, work history of semi-skilled work. Mr. Risley noted the following vocational limitations: limited standing capacity, approaching advanced age, lack of transferable supervisory skills and no work history since 1982. Mr. Risley prepared two addendums following his review of Dr. Lutz's deposition testimony. Mr. Risley noted that he had not reviewed the vocational test results completed by Dr. Stoeckel. Thereafter, relator was authorized to take Mr. Risley's deposition. Given the restriction regarding overhead lifting, Mr. Risley testified that relator could not perform the clerk positions. Furthermore, he indicated that Dr. Stoeckel's testing appeared to be accurate and that relator was performing at less than a 12th grade level.
 {¶ 23} 10. Relator's application was heard before a staff hearing officer ("SHO") on June 12, 2003, and resulted in an order denying the requested compensation. The SHO relied upon the reports and deposition testimony of Dr. Lutz and concluded as follows with regard to relator's physical abilities:
The Staff Hearing Officer finds that the injured worker would be able to engage in sedentary work activity which would allow the injured worker the flexibility to sit and stand as desired for comfort and would preclude overhead reaching with the left upper extremity.
 {¶ 24} 11. The SHO provided his own analysis of the nonmedical disability factors and stated as follows:
The Staff Hearing Officer finds that the injured worker is 67 years old, has a 12th grade education, can read, write, and do basic math and has previous work experience as a forklift operator as well as a volunteer fireman.
The Staff Hearing Officer finds that the injured worker's age of 67 is not a positive factor with regard to the injured worker returning to employment or engaging in retraining necessary for such employment activity.
The Staff Hearing Officer finds that the injured worker can read, write, and do basic math and has a 12th grade education. The Staff Hearing Officer finds that this level of education is sufficient in order for the injured worker to engage in entry level sedentary employment activity.
A review of the report of Dr. Stoeckel dated November 13, 2000 indicates that the injured worker has reading, writing and math skills at the 7th grade level and has a full scale IQ of 89 which classifies the injured worker as a person of low average intelligence. The testing indicated that the injured worker showed some strength for mental arithmetic, verbal understanding and social judgment.
The Staff Hearing Officer finds that these test scores along with the attainment of a high school education indicates that the injured worker has sufficient educational abilities to engage in entry level sedentary employment activities.
The injured worker's past work experience as a fork lift operator involved a 28 year history of employment at the Kroger company. This job was semi skilled in nature and involved moving objects with a forklift. The injured worker also worked on a part time basis as a fire fighter. The injured worker's past work history as a forklift operator required the injured worker to change tasks often and engage in a variety of duties, work under specific instructions and do repetitive work. The Staff Hearing Officer further finds that the injured worker's 28 year work history indicates a level of hard work, and dedication to employment which would be a positive factor with regard to entry level sedentary employment activity. The Hearing Officer finds based upon this factor and the temperaments demonstrated in his past work history, that the injured worker's past work history would not be a detriment to the injured worker returning to entry level sedentary employment activity.
The Hearing Officer finds that although the injured worker is not able to engage in formal education or retraining, he would be able to be retrained through short demonstrations on the job.
The Staff Hearing Officer finds that there are a number of employment activities currently available to the injured worker based upon the restrictions and abilities noted by Dr. Lutz. These employment options would include work as an auction clerk, information clerk, maintenance scheduler or procurement clerk.
Further, the Hearing Officer finds with appropriate on the job training, the injured worker could be employed as a credit authorizer, and mail order clerk. The Hearing Officer finds that these positions would need to accommodate a sit, stand, walk option which would allow for intermittent change of body position.
The clerk positions would be available to the injured worker as long as they did not involved [sic] regular use of his arm to reach overhead in order to lift or return folders or files.
For the above stated reasons, the Staff Hearing Officer finds that the injured worker is able to engage in sustained remunerative work activity and is not permanently and totally disabled.
 {¶ 25} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 27} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 28} Relator contends that the commission abused its discretion by finding that he was capable of performing some sustained remunerative employment when, based upon the physical restrictions noted by Dr. Lutz, he is not even capable of sedentary work as such is defined in the Ohio Administrative Code. Relator cites State ex rel. Libecap v. Indus Comm.
(Sept. 5, 1996), Franklin App. No. 96APD01-29. In Libecap, the claimant had worked as a waitress and a bus driver and her claims had been allowed for numerous physical conditions as well as dysthymic disorder. In his report regarding her allowed psychological conditions, Dr. Bonds failed to clearly address the primary issue of the effect of her emotional conditions upon her ability to be retrained. With regard to the allowed physical conditions, the commission found the claimant medically capable of sustained remunerative employment at the sedentary level, relying upon the medical report of Dr. Littlefield who stated that claimant could sit for no more than 30 minutes at a time. In mandamus, this court found that the commission abused its discretion in determining that claimant had the medical capacity to perform sedentary work because such work requires sitting most of the time and the commission had accepted that claimant could not sit for more than 30 minutes at a time. Therefore, regardless of the fact that the physician had placed the claimant in the "sedentary" category, this court found that the specific restrictions were so narrow as to preclude sustained remunerative employment. Relator argues that the same is true in the present case.
 {¶ 29} In the time since this court issued its decision in Libecap,
the Ohio Supreme Court has released other decisions which affect this court's treatment of relator's allegation that the commission abused its discretion. In State ex rel. Toth v. Indus. Comm. (1997),80 Ohio St.3d 360, the Supreme Court considered whether or not part-time work constituted sustained remunerative employment for purposes of PTD compensation and concluded that it did. In State ex rel. DeSalvo v. MayCo. (1999), Franklin App. No. 98AP-986, affirmed (2000), 88 Ohio St.3d 231, the court indicated that, where a claimant is capable of working more than four hours per day by combining their abilities to sit, stand and walk, the commission may find that the worker is capable of sustained remunerative employment. Based upon these cases, certain principles emerge. First, sustained remunerative employment includes part-time work. Second, where a claimant can perform a work activity but only for a very limited amount of time (such as less than three or four hours per day), the commission may conclude that the claimant is permanently and totally disabled. However, where the claimant is capable of working more than four hours per day by combining their abilities to sit, stand and walk, the commission may find that the worker is capable of sustained remunerative employment.
 {¶ 30} In the present case, in relying upon the medical report of Dr. Lutz and his deposition testimony, this magistrate concludes that the commission did not abuse its discretion by finding that relator was capable of working, at least four hours per day, by combining his abilities to sit, stand and walk. Relator argues that he is required to take frequent breaks which would necessarily remove him from his work station. However, with a sit/stand option, relator could conceivably change position, as needed, without necessarily interfering with his ability to work. Furthermore, although the commission cited the vocational evidence and used such to reach certain findings (i.e., Dr. Stoeckel's testing results), the commission was not required to agree with the ultimate conclusion of Dr. Stoeckel that relator could not work. The commission provided its own vocational analysis which meets the requirements of Noll, supra.
 {¶ 31} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.