DECISION
{¶ 1} In this original action, relator, Joyce D. Gokey ("Gokey"), seeks a writ of mandamus compelling respondent, the Industrial Commission of Ohio ("commission"), to vacate its order denying her permanent total disability ("PTD") compensation and to enter an order granting said compensation. For the following reasons, we deny the requested writ.
 {¶ 2} Gokey was injured in 1983 while employed as a nurse's aide for Manor Healthcare Corporation, a state-fund employer. Her industrial claim was allowed for sacroiliac strain; substantial aggravation of pre-existing degenerative disc disease L3-4, L4-5, L5-S1; and aggravation of pre-existing spinal stenosis. The parties are in agreement that, due to her injuries, Gokey is no longer able to work as a nurse's aide.
 {¶ 3} On April 12, 2004, Gokey filed an application for PTD compensation. At the time of the application, Gokey was 64 years old and held a high school diploma. Gokey's work history includes work as a hospital aide, a laundry worker, a surgical aide, a nursing home aide, and a nurse's aide prior to her injuries. She has worked as a McDonald's counter worker, and a private duty aide since sustaining her injuries.
 {¶ 4} Gokey submitted reports from Drs. Wirebaugh and Alcover in support of her alleged disability. Dr. Alcover concluded Gokey is unable to work in any capacity. Dr. Wirebaugh concluded Gokey is permantly and totally disabled. Dr. Wirebaugh also completed an occupational activity assessment for Gokey. The assessment provided in pertinent part that Gokey was capable of sitting for 5 to 8 hours, standing 0 to 3 hours, and walking 0 to 3 hours.
 {¶ 5} Upon request by the commission and Manor Healthcare Corp., Gokey was also examined by Drs. Popovich and Riethmiller. Dr. Popovich concluded Gokey is cable of performing sedentary work. Dr. Riethmiller also concluded Gokey is capable of performing sedentary work; however, he recognized Gokey would need to be able to change position approximately every 60 minutes.
 {¶ 6} At the further request of Manor Healthcare Corp., a vocational expert, Denise O'Conner, examined the medical reports and issued a vocational report detailing possible employment opportunities for Gokey. O'Conner concluded Dr. Wirebaugh's written report indicating Gokey was permanently and totally disabled was inconsistent with the occupational assessment ratings he provided, which indicated a sedentary level of employment was possible. O'Conner then proceeded to assess Gokey's employability based on the assumption that she could perform sedentary work. O'Conner identified three job matches in the sedentary work category that would utilize most of Gokey's transferable skills, as well as four additional jobs that would be good matches. In total, the vocational report identified 65 job titles that are possible matches for Gokey.
 {¶ 7} On September 22, 2004, a staff hearing officer ("SHO") held a hearing on the application for PTD compensation. The SHO issued an order denying Gokey's PTD application on the basis that she was not permanently or totally disabled nor precluded from performing sustained remunerative work activity. The SHO found that "the preponderance of the medical evidence on file indicates that the injured worker can perform at least sedentary-type employment." Further, the SHO rejected the report of Dr. Wirebaugh as being internally inconsistent. Based on the vocational report, the SHO found Gokey to possess excellent transferable skills. Gokey's age was the one negative factor cited by the SHO, but the SHO concluded that age alone was insufficient to support an award of PTD compensation. Finally, the SHO found that Gokey should have made an attempt to find sedentary work or otherwise reenter the workplace prior to applying for PTD compensation.
 {¶ 8} On January 20, 2005, Gokey filed this mandamus action asserting the commission abused its discretion in rejecting Dr. Wirebaugh's report, reviewing the medical evidence, relying on the vocational report, considering nonmedical factors, and failing to reconcile the PTD decision with a previous impairment of earning capacity decision. The matter was referred to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the rules of this court.
 {¶ 9} The magistrate issued a decision on August 30, 2005. (Attached as Appendix A.) The magistrate found that the commission did not abuse its discretion. The magistrate agreed with the commission that Dr. Wirebaugh's report was internally inconsistent and that the preponderance of the medical evidence indicated Gokey could perform sedentary work. Further, the magistrate found that the commission's reliance on the vocational report, nonmedical factors, and the mention of Gokey's age was appropriate. Lastly, the magistrate held the commission was under no obligation to reconcile or even address its prior impairment of earning capacity ("IEC") award. The magistrate ultimately recommended that we deny relator's request for a writ of mandamus.
 {¶ 10} On September 12, 2005, Gokey filed objections to the magistrate's decision. Gokey asserts the magistrate failed to address whether a medically necessitated "sit/stand option" is consistent with the commission's definition of sedentary employment. Gokey also contends the nonmedical factors considered, such as Gokey's prior job training, are no longer relevant due to the passing of a significant amount of time. Third, Gokey asserts the commission was required to reconcile its previous IEC award with its current denial of PTD compensation.
 {¶ 11} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Questions of credibility and the weight to be given evidence are within the discretion of the commission as fact finder. State ex rel. Teecev. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 12} The relevant inquiry in a determination of PTD is the claimant's ability to do any sustained remunerative employment.State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 13} In Gokey's first objection, she asserts the magistrate should have addressed whether a medically necessitated "sit/stand option" is consistent with the commission's definition of sedentary employment. Due to her injuries, Gokey is medically unable to sit for a sustained period of time unless allowed to stand up or change positions every 30 to 60 minutes. Dr. Wirebaugh, one of Gokey's two chosen physicians, estimated Gokey could sit for 5 to 8 hours per day if she were permitted to change positions as needed. Drs. Reithmiller and Popovich did not place quantitative time restrictions on Gokey's sitting ability. Gokey argues her need for a "sit/stand option" cannot be met by sedentary employment, or employment of any sort.
 {¶ 14} In State ex rel. Moyer v. Sharonville Fire Dept.,
Franklin App. No. 04AP-92, 2005-Ohio-587, we held that the commission had not abused its discretion in finding an individual, with restrictions similar to Gokey's, was still capable of performing sedentary work and therefore not entitled to PTD compensation. In Moyer, the applicant could sit, stand, and walk for 0 to 3 hours per day, but "despite his sitting impairment [he] would be able to sit for approximately three hours per day if allowed to take frequent breaks and stand up or walk around for five to 10 minutes." Id. at ¶ 6. There was evidence before the court that Moyer could perform duties consistent with auction clerk, information clerk, maintenance scheduler, or procurement clerk without needing additional training. Other jobs were possible with some additional training. We held that Moyer's ability to sit for three hours, his ability to walk and stand for similar periods of time, combined with the existence of jobs that could accommodate the restrictions equated to the ability to perform part-time work, which the Ohio Supreme Court has held suffices as sustained remunerative employment.State ex rel Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360.
 {¶ 15} There is some evidence in the record that Gokey's restrictions, on the whole, are less severe than Moyer's, and that she can sit for approximately twice as long as Moyer, possibly up to and including a full eight hours. Further, there is evidence in the record that there is an array of possible sedentary employment which could accommodate Gokey's various restrictions. Regardless of whether the magistrate specifically addressed the question, in light of Moyer and the evidence, the commission did not err in finding Gokey is capable of performing sustained remunerative sedentary work despite her restrictions. The "sit/stand option" is not inherently inconsistent with sedentary work. Gokey's first objection is overruled.
 {¶ 16} Gokey's second objection relates to the commission's assessment of her past/transferable skills. After graduating from high school, Gokey received business training in how to use an adding machine and in typing. Gokey also took classes to become a nurse's aide. Gokey contends the business and nursing aide training should not be considered as past/transferable skills because they occurred some 40 years prior to her application for PTD compensation.
 {¶ 17} We can find no statute or case law, and Gokey fails to provide any, that holds learned skills can only be considered for a finite period of time. While Gokey may feel her prior training is useless in today's world, others may find value in the acquired knowledge. The weight to be given to certain evidence is a matter of discretion for the commission. We find no abuse of discretion and will not disturb the commission's decision that the training has some weight. Gokey's second objection is overruled.
 {¶ 18} In her third objection, Gokey contends the commission was required to reconcile its previous IEC award with its current denial of PTD compensation. Gokey asserts the two awards have similar purposes and natures and, therefore, it is inconsistent for the commission to award IEC but deny PTD compensation.
 {¶ 19} While the two forms of compensation may have similar purposes, the standards for awarding the two are different. "[E]ntitlement to IEC demands proof of an actual impaired earning capacity and a causal relationship between the impairment and claimant's allowed conditions." State ex rel. Borden, Inc. v.Indus. Comm., 101 Ohio St.3d 191, 2004-Ohio-720, at ¶ 12. In contrast, an award of PTD compensation requires a claimant to prove an inability to perform sustained remunerative employment. Since the two are separate forms of compensation and are awarded based on different standards, it is irrelevant whether Gokey had previously been awarded IEC. Gokey's third objection is overruled.
 {¶ 20} Pursuant to Civ.R. 53(E)(4), the court has conducted a full review of the magistrate's decision. The court has considered relator's objections as well as both supporting and opposing memoranda. For the reasons set forth above, we overrule the objections and adopt the decision of the magistrate. The request for a writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Bryant and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Joyce D. Gokey,: Relator, : v. : No. 05AP-65 Industrial Commission of Ohio : (REGULAR CALENDAR) and Manor Healthcare Corp., : Respondents. :
 MAGISTRATE'S DECISION Rendered on August 30, 2005 Spitler Williams-Young Co., L.P.A., William R. Menacher andSteven M. Spitler, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
Shumaker, Loop Kendrick, LLP, Scott Deller and MichelleZarou, for respondent Manor Healthcare Corp.
 IN MANDAMUS {¶ 21} In this original action, relator, Joyce D. Gokey, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 22} 1. On June 26, 1983, relator sustained an industrial injury while employed as a nurse's aide for respondent Manor Healthcare Corp., a state-fund employer. The industrial claim is allowed for "sacroiliac strain; substantial aggravation of pre-existing degenerative disc disease L3-4, L4-5, L5-S1; aggravation of pre-existing spinal stenosis," and is assigned claim number 83-15688.
 {¶ 23} 2. On April 12, 2004, relator filed an application for PTD compensation. In support, relator submitted reports from Ingrid A. Alcover, M.D., and Jeffrey F. Wirebaugh, M.D.
 {¶ 24} 3. The November 29, 2003 report of Dr. Alcover states: "She will definitely not be able to work at any capacity."
 {¶ 25} 4. The November 18, 2003 report of Dr. Wirebaugh states:
Joyce Gokey was evaluated on October 23, 2003 for an opinion as to whether she can return to her former position of work as a nursing assistant, and whether she is permanently and totally disabled from remunerative employment.
* * *
The claimant is unable to return to her job as a nursing assistant due to the impairments from her allowed conditions. She is unable to transfer, lift or reposition patients. She is limited to lifting 10 pounds. She cannot lift this on a frequent or repetitive basis or from below her knee level. She cannot do activity requiring any frequent bending or twisting. She cannot be on her feet for more than a half an hour at a time or sit for more than 1 hour at a time without being given the option of changing positions.
Based upon the allowed diagnosis in the claim, the claimant is permanently and totally disabled.
 {¶ 26} 5. Dr. Wirebaugh completed an occupational activity assessment form on October 23, 2003. The form instructs the examining physician:
Indicate the claimant's capability in each of the following activities with a check mark. Consistency between the claimant's level of daily living activities and potential occupa-tional activities is expected. Please leave no category blank. The time indicated may be made up of interrupted periods of occupational activity throughout the day. Restrictions must be based on impairment arising from allowed condition(s) only[.]
(Emphasis sic.)
 {¶ 27} On the form, Dr. Wirebaugh indicated by checkmark that relator can sit "5-8 HRS," can stand "0-3 HRS," and can walk "0-3 HRS."
 {¶ 28} Dr. Wirebaugh further indicated by checkmark that relator can lift or carry up to ten pounds for "0-3 HRS." She cannot lift or carry ten pounds or over at all. She can push, pull or otherwise move less than ten pounds for "0-3 HRS," but cannot perform those functions at ten pounds or greater.
 {¶ 29} Dr. Wirebaugh indicated that relator can handle (seize, hold, grasp, turn) "frequently." However, she cannot climb stairs or ladders, use foot controls, crouch, stoop, bend or kneel. She can reach overhead from "3-5 HRS." However, she cannot reach at waist level, knee level or floor level at all.
 {¶ 30} 6. On June 7, 2004, relator was examined at the employer's request by Michael K. Riethmiller, M.D. In his report, dated June 11, 2004, Dr. Riethmiller states:
Due to the allowed conditions in this claim, Ms. Gokey does have physical limitations in the performance of work activities. She is able to function at a sedentary physical demand level of work as defined by the U.S. Department of Labor in theDictionary Of Occupational Titles. This would mean that she could lift upwards of 10 pounds during only one-third or less of a work shift. She would be unable to climb ladders or stairs and would be unable to crawl or squat. She would be able to twist or bend her spine only occasionally and would need to be able to change positions every 60 minutes. She would be unable to reach below knee level. * * *
(Emphasis sic.)
 {¶ 31} 7. On June 23, 2004, relator was examined at the commission's request by Harvey A. Popovich, M.D. In his narrative report, Dr. Popovich states:
* * * Lumbosacral range of motion is markedly reduced and the right ankle reflex is absent. There is also diminished strength of both lower extremities and sensory loss on the lateral aspect of the right foot with borderline muscle atrophy of the right lower leg compared to the left. These findings place Ms. Gokey in the Diagnosis Related Estimate Lumbo-sacral Category III. Ms. Gokey's activities of daily living including work are limited by the allowed conditions of this claim.
 {¶ 32} 8. On June 23, 2004, Dr. Popovich completed a physical strength rating form. On the form, Dr. Popovich indicated that relator can perform "sedentary work."
 {¶ 33} 9. The employer requested a vocational report from Denise O'Conner, a vocational expert. In her report, dated August 13, 2004, O'Conner addressed the medical reports of Drs. Riethmiller, Popovich, Alcover and Wirebaugh. Of significance here, is O'Conner's analysis of Dr. Wirebaugh's report:
Dr. Jeffrey F. Wirebaugh, in a correspondence dated November 18, 2003, opined Ms. Gokey was unable to return to her job as a nursing assistant due to the impairments from her allowed conditions. He further stated she is limited to lifting 10 lbs. She cannot lift this on a frequent or repetitive basis or from below her knee level. She cannot do activity requiring any frequent bending or twisting. She cannot be on her feet for more than a half an hour at a time or sit for more than 1 hour at a time without being given the option of changing positions. The restrictions he placed would place her in a sedentary position with the option to sit and stand as needed. Although he stated these restrictions he opined, "The claimant is permanently and totally disabled."
 {¶ 34} Of further significance here is O'Conner's discussion of the reports of the four physicians who examined relator and submitted reports:
Two of the four physicians that examined Ms. Gokey found her able to work in a sedentary level of worker strength. The third physician, Dr. Jeffrey F. Wirebaugh stated she was permanently and totally disabled, but also provided re-strictions that would allow her to work in a sedentary level of worker strength. * * *
 {¶ 35} The O'Conner report further states:
Age: The claimant is currently 64 years old. She has reached the traditional retirement age. She is currently receiving a retirement benefit in the form of monthly monies. Although Ms. Gokey is 64, it should be noted however, that there is no direct correlation between age and employability.
Education: According to the PTD application, Ms. Gokey graduated from high school in 1965.[1] She obtained her nursing assistant training in the sixties. Dr. Reithmiller's [sic] report documented Ms. Gokey attended Davis Business College and obtain[ed] a certificate in typing and adding machine.
Work History: According to the PTD application and Dr. Reithmiller's [sic] report, the claimant's work history consist[s] of employment working as a private duty aid for a few months. She worked with McDonald [sic] as a counter person for two years. According to Dr. Reithmiller's [sic] report, she left this job to take care of her husband. She was employed as a nurse's aid with the HCR Manor Care from 1981-1983. She also was employed with a nursing home from 1981-1990. She was a surgical aide in 1970. From 1965-1970 Ms. Gokey worked as a laborer in a laundry. She also worked as an aide in the hospital in 1960. Ms. Gokey's PTD did not state dates for some of her employment.
Transferable Skills Analysis: The Oasys was used to analyze the claimant's transferable skills. The Oasys is a computer-ized tool that produces a sample of jobs in which a person has transferable skills based on their education, work history, and capabilities.
The claimant's jobs were coded by the Dictionary of Occupational Titles as follows:

 Work History DOT Code DOT Title
 Nurses Aid 355.674-014 Nurse Assistant
 Surgical Aid 599.585-010 Sterilizer
 Nursing Home Aide 355.674-014 Nurse Assistant
 Counter Person 311.472-010 Fast Food Worker
 Laundry Worker 311.472-010 Laundry Worker II
 Typing Certificate 203.582-066 Typist

The determination of the DOT code is based on a combination of the job title and the listed job tasks. Not all jobs will have a direct translation to DOT job titles. In this case, the coding is based on the job tasks and job title.
The claimant's work history is categorized as unskilled to semi-skilled in nature.
Both Michael K. Riethmiller M.D., J.D and Harvey A. Popovich M.D opined Ms. Gokey was capable of employment in the sedentary range of worker strength.
* * *
The Oasys provides several levels of transferability. The first level, closest match/closest transferability level, which is defined as jobs that include the same work activities in the same industries that a person has performed in the past.
The good match/good transferability category would include jobs that are similar in work activities and similar industries of jobs that a person has performed in the past. In this category a person would have most of the skills to do the job and may or may not need some training to master the job.
The fair match/fair transferability category is defined as the work activities and industries being less similar than the good match. In this category the person will need some training to master the job.
The potential match/potential transferability category is defined as a person having little to no skills to do the job, but based on their past experiences would be a good candidate to be trained for the job.
In the claimant's case, in the sedentary work capacity, there were three (3) job match in the closest transferability/match category and four (4) job matches in the good match/transfer-ability category. In the fair match/transferability, Ms. Gokey's TSA produced one (1) occupational title and in the potential transferability/match category 57 titles were produced. All of the matching job titles are listed in the attached DOT Occupational Match Report. Transferability skills include:
Has the ability to type
Ability to drive
Ability to seek and maintain employment
Ability to work with people
Ability to make decisions and judgments
Ability to follow instruction
Ability to attain precise limits and tolerances
Ability to make judgments
Ability to perform a variety of task
Ability to perform well under stress
Has a high school education
Has training beyond high school
Additionally, the claimant would be capable of unskilled and semiskilled work in the sedentary work capacity. Unskilled and semiskilled work does not necessarily require a person to have prior experience or transferable skills to be considered a candidate for the job. The job is learned through short-term on-the-job training. Short-term is defined as 1 to 90 days. Examples of these types of jobs would be telephone solicitor, appointment setter, greeter, cashier (sitting) and light bench assembly.
 {¶ 36} 10. The O'Conner report further provides a "Local Labor Market Survey" of the Toledo, Ohio area where relator resides. Based on O'Conner's review of employment listings in the Toledo Blade on August 8, 2004, O'Conner found that relator is qualified for employment as a receptionist and telemarketer.
 {¶ 37} 11. In her report, O'Conner concludes with the following opinion:
Based on the information available to this specialist and, considering the allowed conditions of the claims, it is this specialist's opinion, based on the claimant's education, physical abilities, skills, age and prior work experience, that the claimant is capable of sustained remunerative employ-ment.
 {¶ 38} 12. Following a September 22, 2004 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO order states:
* * * This order is based particularly upon the reports of the physicians identified in the body of this order.
The Staff Hearing Officer finds that this is a 66 year old woman whose date of birth is November 13, 1937. The injured worker has a 12th [grade] education and is capable of reading, writing, and performing basic math. In addition, the injured worker took additional classes in nursing beyond high school, as well as some administrative classes, at a local business college including adding machine and typing classes. The injured worker worked as a nurse's aide at the time of the injury herein. Thereafter, the injured worker left that employment and worked for a couple of years as a counter person at McDonalds. The injured worker stopped working at McDonalds in order to be home to care for her ill husband. The injured worker then obtained two sets of employment as a home health care worker which basically resulted in companion type duties. The reason the injured worker left this employment is because the patient passed away. Again, at that time the injured worker's husband was still very ill, and she did not do any further job search for other companionship-type positions or any other type of lighter duty employment.
This Staff Hearing Officer finds that the injured worker was injured on June 26, 1983. The injured worker was getting clothes from a patient's closet in his room. He came up behind her and started pounding on the upper part of her back with his fists forcing her into the door and then down to her knees twisting her lower back as she hit the floor. The injured worker was initially treated conservatively. She left that employment and performed at least two other types of employment before any further invasive treatment was required. The injured worker has had only one surgery in regard to the allowed conditions in this claim and that was on June 13, 1996.
This Staff Hearing Officer finds that the preponderance of the medical evidence on file indicates that the injured worker can perform at least sedentary-type employment. This is supported by the reports of Dr. Riethmiller dated 06/11/2004 and the report of Dr. Popovich dated 06/23/2004.
The report of Dr. Wirebaugh dated 11/18/2003 is specifically rejected as Dr. Wirebaugh both says that the injured worker can perform sedentary work activity and then opines that she is permanently and totally disabled from sustained remuner-ative employment. This report is internally inconsistent and, therefore, is not some evidence upon which the Industrial Commission can rely in making any determination of Permanent and Total Disability.
The injured worker's counsel argues that the restrictions would preclude the injured worker from performing a full range of sedentary work because of the need to get up and change positions frequently approximately once every ½ hour. This Staff Hearing Officer finds that is not the case. Many types of sedentary work, including part-time sedentary work, can constitute sustained remunerative employment and would fall within the injured worker's restrictions. In addition, the Supreme Court has held that it is not necessary to determine that the injured worker is unable to perform a full range of sedentary employment in order to sustain a denial of Permanent and Total Disability Compensation, State ex rel. Wood v. Indus. Comm. (1997),78 Ohio St.3d 414.
The injured worker has excellent [State ex rel. Stephenson v.Indus. Comm. (1987), 31 Ohio St.3d 167] factors in transferable skills which is supported by vocational specialist, Denise O'Conner, in her report dated August 13, 2004. The injured worker has a 12th grade education, is able to read, write and perform basic math. The injured worker also has additional training as a nurse's aide and also business classes in adding machines and typing. The injured worker's [sic] has worked as a nurse's aide, as a counter person, and as a home health care person. Ms. O'Conner indicates that as a result and in the sedentary work capacity there would be at least three jobs in the closest match/transferability category, four job matches in the good match/transferability category, and one in the fair match/transferability category available to her.
This Staff Hearing Officer finds that the only vocational factor that is negative is the injured worker's age. In that regard, the Supreme Court has determined pursuant to State exrel. DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d, as well asState ex rel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d, 414, that age alone is insufficient to support a finding of Permanent and Total Disability benefits.
Finally, this Staff Hearing Officer finds that the injured worker did not make any attempt to look for sedentary work or additional companionship work after she left employment in 1993 for reasons wholly unrelated to the allowed conditions in this claim. The injured worker has not participated in vocational rehabilitation efforts after her departure from her work at McDonalds as a counter person. From 1987 through the present, the injured worker has not made any attempts at rehabilitation or job search efforts. Therefore, pursuant to Speelman v. Indus. Comm.
(1992), 73 Ohio App.3d, 757; State ex rel. Bowling v. Natl. CanCorp. (1996), 77 Ohio St.3d, 148; and State ex rel. Wilson v.Indus. Comm. (1997), 80 Ohio St.3d, 250, Permanent and Total Disability benefits are benefits of the last resort, and it is not unreasonable to expect an injured worker to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve re-employment potential. The injured worker must be held to a standard of accountability and the injured worker's failure to improve his or her skills after his or her departure from the workforce and prior to filing an Application for Permanent and Total Disability can amount to a shirking of responsibility.
The cases come into effect if there are no other reasons that would preclude the injured worker from performing those activities. This Staff Hearing Officer finds that if the injured worker is medically capable of performing sedentary work based upon the reports of Dr. Riethmiller and Dr. Popovich, and she has a 12th grade education plus additional training post high school. The injured worker's past work history is categorized as unskilled and semi-skilled in nature. Ms. O'Conner does indicate that there are some transferable skills to other types of employment. Therefore, there does not appear to be any deficit which would preclude the injured worker from having made an attempt at rehabilitation or additional job search.
This Staff Hearing Officer finds that the sedentary work activity, as well as the injured worker's past skills would indicate an ability to perform such types of employment as some receptionist positions with an ability to get up and move around as necessary, telemarketing positions, part-time work positions, surveillance systems monitors, and in fact she could probably perform the companionship work which she quit in 1993 after the death of the patient in order to care for her husband.
Therefore, as a result of the sedentary work capabilities as established by Dr. Riethmiller and Dr. Popovich, the injured worker's positive vocational factors and transferable skills, the injured worker is not permanently and totally disabled, nor precluded from performing sustained remunerative work activity. As [a] result, the IC-2 Application, filed on April 12, 2004, is hereby DENIED.
(Emphasis sic.)
 {¶ 39} 13. On January 20, 2005, relator, Joyce D. Gokey, filed this mandamus action.
Conclusions of Law:
 {¶ 40} Several issues are presented: (1) whether the commission abused its discretion in rejecting Dr. Wirebaugh's reports; (2) whether the commission abused its discretion in finding that the "preponderance" of the medical evidence indicates that relator can perform at least sedentary employment; (3) whether the commission abused its discretion by relying upon the O'Conner vocational report; (4) whether the commission abused its discretion in considering the nonmedical factors; and (5) whether the commission abused its discretion in failing to "reconcile" its decision on the PTD application with the commission's granting of former R.C. 4123.57(B) impairment of earning capacity ("IEC") following a February 2, 1999 hearing.
 {¶ 41} The magistrate finds: (1) the commission did not abuse its discretion in rejecting Dr. Wirebaugh's reports; (2) the commission did not abuse its discretion in finding a "preponderance" of the medical evidence indicates that relator can perform at least sedentary employment; (3) the commission did not abuse its discretion by relying upon the O'Conner vocational report; (4) the commission did not abuse its discretion in considering the nonmedical factors; and (5) the commission did not abuse its discretion in failing to "reconcile" its decision on the PTD application with its prior decision granting IEC compensation.
 {¶ 42} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 43} The first issue focuses on the commission's explanation for rejecting Dr. Wirebaugh's reports:
The report of Dr. Wirebaugh dated 11/18/2003 is specifically rejected as Dr. Wirebaugh both says that the injured worker can perform sedentary work activity and then opines that she is permanently and totally disabled from sustained remuner-ative employment. This report is internally inconsistent and, therefore, is not some evidence upon which the Industrial Commission can rely in making any determination of Permanent and Total Disability.
 {¶ 44} According to relator, "nowhere in his [reports] does Dr. Wirebaugh state relator is capable of sedentary work." (Relator's brief, at 11.)
 {¶ 45} While it is true that Dr. Wirebaugh does not actually conclude that relator can perform sedentary work, he does indeed report restrictions that can be viewed as providing a sedentary work residual functional capacity under Ohio Adm. Code4121-3-34(B)(2)(a) which states:
"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 46} The magistrate agrees with vocational expert O'Conner that Dr. Wirebaugh's restrictions place relator in the sedentary work classification.
 {¶ 47} Because Dr. Wirebaugh's restrictions indicate that relator's residual functional capacity is at the sedentary level, his opinion that relator is "permanently and totally disabled" is inconsistent with those restrictions.
 {¶ 48} Clearly, based upon the above analysis, the commission's explanation for its rejection of Dr. Wirebaugh's reports is not an abuse of discretion.
 {¶ 49} The second issue is whether the commission abused its discretion in finding that the "preponderance" of the medical evidence indicates that relator can perform at least sedentary employment.
 {¶ 50} Ohio Adm. Code 4121-3-34(D)(3)(a) and (c) states:
The burden of proof shall be on the injured worker to establish a case of permanent and total disability. The burden of proof is by preponderance of the evidence. The injured worker must establish that the disability is permanent and that the inability to work is causally related to the allowed conditions.
* * *
The industrial commission has the exclusive authority to determine disputed facts, the weight of the evidence, and credibility.
 {¶ 51} Preponderance of the evidence means the greater weight of the evidence. Dawson v. Anderson (1997), 121 Ohio App.3d 9,13; Weishaar v. Strimbu (1991), 76 Ohio App.3d 276, 283. TheWeishaar court provided the following meaning:
Preponderance of the evidence means the greater weight of the evidence. State v. Stumpf (1987), 32 Ohio St.3d 95, 102,512 N.E.2d 598, 606. Furthermore, McCormick, Evidence (3Ed. Cleary Ed. 1984) 957, Section 339, provides:
"The most acceptable meaning to be given to the expression, proof by a preponderance, seems to be proof which leads the [trier of fact] to find the existence of the contested fact is more probable than its nonexistence."
 {¶ 52} There were four doctors who submitted reports regarding the PTD application. The commission stated reliance upon the reports of Drs. Riethmiller and Popovich, and expressly rejected the report of Dr. Wirebaugh. The commission did not mention the report of Dr. Alcover in its order nor was it required to do so.
 {¶ 53} The relied upon reports clearly provide the some evidence supporting the commission's finding that relator is medically able to perform sedentary work. Even the restrictions set forth in Dr. Riethmiller's report support sedentary employment.
 {¶ 54} Clearly, the commission did not abuse its discretion in finding that "the preponderance of the evidence on file indicates that the injured worker can perform at least sedentary type employment."
 {¶ 55} The third issue is whether the commission abused its discretion in relying upon the O'Conner vocational report. According to relator, the vocational report is flawed because it concludes that relator is medically able to perform sedentary work based upon the reports of Drs. Riethmiller and Wirebaugh. (Relator's brief, at 12-13.) Relator's contention lacks merit for the reasons previously discussed above.
 {¶ 56} The fourth issue is whether the commission abused its discretion in considering the nonmedical factors. Relator faults the commission for pointing out that relator "has additional training as a nurse's aide and also business classes in adding machines and typing." According to relator, her nurse's aide training is irrelevant because she can no longer work as a nurse's aide. According to relator, because adding machines are no longer used, and the typing training occurred some 40 years ago, those findings are also irrelevant. (Relator's brief, at 13-14.)
 {¶ 57} That relator had the intellectual ability to be trained beyond the high school level is not irrelevant even if some of the training was to use machines that are no longer in use.
 {¶ 58} Relator also faults the commission's consideration of her age. In that regard, the commission's order states:
This Staff Hearing Officer finds that the only vocational factor that is negative is the injured worker's age. In that regard, the Supreme Court has determined pursuant to State exrel. DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d, as well asState ex rel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d, 414, that age alone is insufficient to support a finding of Permanent and Total Disability benefits.
 {¶ 59} In State ex rel. Moss v. Indus. Comm. (1996),75 Ohio St. 3d 414, the court states: "It is not enough for the commission to just acknowledge claimant's age. It must discuss age in conjunction with the other aspects of the claimant's individual profile that may lessen or magnify age's effects." Id. at 417.
 {¶ 60} According to relator, the commission failed to affirmatively address the age factor. (Relator's brief, at 15.) The magistrate disagrees. The commission noted that relator's age is the only negative vocational factor and that her age alone cannot support PTD. The commission met its duty in addressing age. State ex rel. Blue v. Indus. Comm. (1997),79 Ohio St.3d 466.
 {¶ 61} The fifth issue is whether the commission abused its discretion in failing to "reconcile" its decision on the PTD application with the commission's prior granting of IEC compensation following a February 2, 1999 hearing.
 {¶ 62} Relator included in the record a copy of the DHO's order of February 2, 1999:
Claimant is granted a change of election for good cause shown, in the claimant's condition worsened following surgery, prohibiting her from returning to her former position of employment which was unforeseeable at the time of initial election, based on Dr. Hughes, 9-10-98.
Claimant is awarded an impairment of earning capacity, to be calculated pursuant to Eaton, as 66-2/3% of the difference between claimant's re-injury earning capacity and post-injury earning capacity. Pre-injury earning capacity is set at $300.00 based on $7.50 X 40 hours, the wages claimant would be earning at her former position of employment.
Post-injury earning capacity is set at $0.00, as claimant is unable to work at this time.
Claimant has restrictions of no lifting, pushing, pulling or squatting. Limited standing and sitting based on Dr. Hughes, 9-10-98.
The impairment in earning capacity is to be paid from 7-10-97 through 2-2-99 and to continue subject to statutory maximum and less permanent partial disability paid.
Claimant's age 61 education high school and work experience laundry, nursing assistant, fast food service were taken into consideration in reaching this decision.
 {¶ 63} According to relator:
This previous ruling of the commission was re-submitted at the time of the September 22, 2004 PTD hearing. Yet nowhere in the SHO's September 22, 2004 Order does the hearing officer even attempt to reconcile her ruling with the ruling made in 1999. It is a situation that calls for some reconciliation between a decision in 1999 that the claimant has zero dollars post-injury earning capacity due to her industrial injury and a 2004 ruling that, by virtue of finding the relator capable of sedentary work, imputes an earning capacity greater than zero dollars.
(Relator's brief, at 17-18.)
 {¶ 64} The magistrate agrees that the commission's order denying PTD compensation implies that relator has some earning capacity greater than zero. State ex rel. Brown v. Indus. Comm.
(1993), 68 Ohio St.3d 45, 47 (the purpose of PTD compensation is to compensate a worker for total impairment of his or her earning capacity). However, there was no requirement that the commission address the prior IEC award in its order adjudicating PTD compensation.
 {¶ 65} The IEC award of February 2, 1999, is simply not time-relevant to a PTD application filed more than five years later. Obviously, the PTD application does not claim that relator was permanently and totally disabled during the time she was awarded IEC compensation. Apparently, the IEC award was premised upon a September 11, 1998 report from a Dr. Hughes, a report that was not, and could not, be submitted in support of the PTD application because it is not time-relevant to the PTD application.
 {¶ 66} Clearly, the commission is not required to address in its order adjudicating the PTD application every conceivable issue that relator wishes to raise. While relator asserts here that she "resubmitted" the DHO's order to the SHO at the PTD hearing, the SHO was not required to address the DHO's order or to explain its lack of significance.
 {¶ 67} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] The PTD application indicates that relator graduated from high school in 1956, not 1965.